## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

RICKY TISDALE                                                    CIVIL ACTION

versus                                                           NO. 15-1466

BURL CAIN                                                        SECTION: "B" (3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that the matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Ricky Tisdale, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On March 2, 2009, he pleaded guilty under Louisiana law to three counts of distribution of MDMA and one count of possession with intent to distribute MDMA.[1]  On that same date, he also pleaded guilty to being a fourth offender.[2]  On November 12, 2009, he was then sentenced as a fourth offender on each count to a concurrent term of life imprisonment

---

[1] MDMA, or methylenedioxymethamphetamine, is also known as "ecstasy."

[2] State Rec., Vol. II of VI, transcript of March 2, 2009; State Rec., Vol. I of VI, minute entry dated March 2, 2009.

without benefit of probation, parole, or suspension of sentence.[3] After he was granted an out-of-time appeal,[4] the Louisiana First Circuit Court of Appeal affirmed his convictions, habitual offender adjudication, and sentences on June 8, 2012,[5] and the Louisiana Supreme Court denied his related writ application on January 25, 2013.[6]

On January 2, 2014, petitioner filed an application for post-conviction relief with the state district court.[7] After an evidentiary hearing was held on August 13, 2014,[8] that application was denied on September 11, 2014.[9] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on February 9, 2015,[10] and by the Louisiana Supreme Court on June 19, 2015.[11]

---

[3] State Rec., Vol. II of VI, transcript of November 12, 2009; State Rec., Vol. I of VI, minute entry dated November 12, 2009; State Rec., Vol. II of VI, Reasons for Judgment dated November 17, 2009.

[4] State Rec., Vol. II of VI, Order dated March 23, 2011.

[5] State v. Tisdale, No. 2011 KA 2159, 2012 WL 2061540 (La. App. 1st Cir. June 8, 2012); State Rec., Vol. V of VI.

[6] State v. Tisdale, 105 So.3d 64 (La. 2013); State Rec., Vol. V of VI.

[7] State Rec., Vol. III of VI.

[8] State Rec., Vol. III of VI, transcript of August 13, 2014.

[9] State Rec., Vol. III of VI, Order dated September 11, 2014.

[10] State v. Tisdale, No. 2014 KW 1674 (La. App. 1st Cir. Feb. 9, 2015); State Rec., Vol. III of VI.

[11] State v. Tisdale, No. 2015-KP-0373, 2015 WL 4429377 (La. June 19, 2015); State Rec., Vol. IV of VI.

In the interim, on April 30, 2015, petitioner filed the instant federal application for *habeas corpus* relief.[12]   The state concedes that the application is timely and that petitioner has exhausted his remedies in the state courts.[13]

In his federal application, petitioner claims that he received ineffective assistance of counsel.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984).  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).   "Counsel's performance is deficient if it falls below an objective standard of reasonableness." Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).   Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting

---

[12] Rec. Doc. 1.

[13] Rec. Doc. 12, pp. 3-4.

Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to satisfy the prejudice prong of an ineffective assistance of counsel claim in a case involving a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); accord James v. Cain, 56 F.3d 662, 667 (5th Cir. 1995).

Petitioner's ineffective assistance of counsel claim was denied on the merits by the state courts.  The state district court held:

> The pending application for post-conviction relief alleges that Mr. Tisdale was denied effective assistance of counsel due to the providing of incorrect legal advice during the guilty plea procedure. Specifically, Mr. Tisdale alleges that his counsel failed to advise him that he was facing an automatic life sentence under the habitual-offender statute, La. R.S. 15:529.1.
>
> Mr. Tisdale's former counsel, James Williams, testified at the evidentiary hearing on August 13, 2014.  Mr. Williams stated without a doubt that he advised Mr. Tisdale that he was facing life imprisonment.  While Mr. Williams did not recall whether he told Mr. Tisdale it was an automatic life sentence, he testified that even knowing it was an automatic life sentence he would have recommended that Mr. Tisdale plead guilty.  Mr. Williams stated that he felt that there was no chance of a verdict of not guilty at a trial, and that Mr. Tisdale's best chance was receiving less than a life sentence following a Dorthey hearing.  Mr. Williams further testified that he did not feel witnesses were necessary in connection with the Dorthey hearing.
>
> Mr. Williams' associate, Rachel Yazbeck, testified that she was aware that Mr. Tisdale was subject to a life sentence, but did not believe at the time of the plea to the underlying charges that it was an automatic life sentence.  She also testified that there was no real defense to the underlying charges.

- 4 -

Mr. Tisdale testified that he pled guilty with the understanding that the Judge would not give him a life sentence, and that he would not have pled guilty to life.

Petitioner's claim is that his counsel was ineffective for failing to advise him that he was facing an automatic life sentence under the habitual-offender statute, La. R.S. 15:529.1, must be determined in light of the two-pronged test set out by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires that a convicted defendant show both that (1) counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

In the context of guilty pleas, the second, or "prejudice," requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 58-60, 106 S. Ct. 366, 370-71, 88 L. Ed. 2d 203 (1985).

The Court finds with regard to this claim that petitioner failed to carry his burden of proof pursuant to Louisiana Code of Criminal Procedure Article 930.2.

The record reflects that counsel for Mr. Tisdale failed to comply with Code of Criminal Procedure Article 881.1, and Mr. Tisdale was procedurally barred from having his sentences reviewed on appeal. Under the Strickland test, a failure to file a motion to reconsider sentence in itself does not constitute ineffective assistance of counsel. However, if the defendant can show a reasonable probability that, but for counsel's error, his sentence would have been different, a basis for an ineffective assistance claim may be found. Thus, the defendant must show that but for his counsel's failure to file a motion to reconsider sentence, the sentence would have been changed, either in the district court or on appeal. State v. Felder, 2000-2887 (La. App. 1 Cir. 9/28/01), 809 So.2d 360, 369-70 writs denied, 2001-3027 (La. 10/25/02), 827 So. 2d 1173. The Court finds that petitioner failed to carry his burden of proof in this regard.

Accordingly, under Louisiana Code of Criminal Procedure Article 929, the relief sought must be denied.[14]

---

[14] State Rec., Vol. III of VI, Order dated September 11, 2014.

- 5 -

Without additional reasons assigned, petitioner's related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[15] and the Louisiana Supreme Court.[16]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).

Regarding the "contrary to" clause of § 2254(d)(1), the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Here, the state court's decision was not "contrary to" clearly established federal law in either of those respects.  The state court correctly identified and then applied the clearly established federal law applicable to ineffective assistance of counsel claims:  Strickland v.

---

[15] State v. Tisdale, No. 2014 KW 1674 (La. App. 1st Cir. Feb. 9, 2015); State Rec., Vol. III of VI.

[16] State v. Tisdale, No. 2015-KP-0373, 2015 WL 4429377 (La. June 19, 2015); State Rec., Vol. IV of VI.

Washington, 466 U.S. 668, 697 (1984).  Additionally, petitioner does not point to, and this Court has not found, a United States Supreme Court case with "materially indistinguishable facts." Therefore, the state court decision simply cannot be said to run afoul of the "contrary to" clause of § 2254(d)(1).

As a result, petitioner is entitled to relief only if he shows that the state court's decision constituted an "unreasonable application of" clearly established federal law.  That is a formidable task.  Regarding the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case."  White v. Woodall, 134 S. Ct. 1697, 1706 (2014).  That standard significantly restricts the Court's discretion in several respects.

First, the Supreme Court has cautioned:

Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.  Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision.  AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

- 7 -

Second, the Supreme Court has expressly held that "an unreasonable application is different from an incorrect one."  Bell v. Cone, 535 U.S. 685, 694 (2002).  Therefore, on *habeas* review, "an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011).  As the United States Supreme Court has explained:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, *not a substitute for ordinary error correction through appeal*.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added).

Third, under the AEDPA, review of a Strickland claim is in fact *doubly* deferential.  As the United States Supreme Court has explained:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Id. at 101 (citation omitted). The Supreme Court continued:

Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. *The standards created by* Strickland *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied* Strickland's *deferential standard.*

- 9 -

Id. at 105 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.[17]

       In the instant case, petitioner argues that his counsel was ineffective for failing to accurately inform him that he faced a mandatory life sentence as an habitual offender.  There seems

_____

[17] Before turning to the specifics of petitioner's claim, the Court will first quickly dispose of one of his underlying allegations.  When petitioner entered his guilty pleas, he was represented by Rachel Yazbeck.  He now contends that this was improper, because his attorney of record was James Williams, Yazbeck's employer at the time, who was not present at the hearing.  However, on direct appeal, the Louisiana First Circuit Court of Appeal was unmoved by that contention, explaining:

> We find no support for the defendant's position that the absence of his "enrolled counsel" created error.  At a proceeding on March 2, 2009, the defendant pled guilty to counts 1-4 in the amended bill of information and admitted to the allegations in the multiple offender bill.  Throughout this proceeding, the defendant was represented by Ms. Rachael [sic] Yazbeck instead of the defendant's counsel of record, Mr. James A. Williams.  The minutes and transcript of the March 2, 2009 proceeding clearly show that Ms. Yazbeck appeared on behalf of the defendant, that the defendant was able to and did indeed consult with her during the proceeding, and even that the defendant admitted satisfaction with his lawyer's work.  At no time did the defendant object to Ms. Yazbeck's representation, request his "enrolled counsel," or seek a continuance so that Mr. Williams could be present.  Since the transcript plainly proves that Ms. Yazbeck was representing the defendant, and that this representation was acceptable to the defendant at that time, the defendant has waived any objections to this issue.  Moreover, the defendant cites no authority for his argument that he is entitled only to representation by his "enrolled counsel."

To the extent that petitioner may now reasserting this argument, it should likewise be rejected by this Court.  Petitioner has not pointed to, and this Court is not aware of, any authority holding that, under these facts, it was improper for the trial court to allow Yazbeck to appear on petitioner's behalf with his obvious consent.

to be little question that petitioner was in fact misinformed.  At the evidentiary hearing, Yazbeck testified that, at the time petitioner's plea was entered, even she did not realize that petitioner faced an automatic life sentence – she thought the sentencing range would be twenty years to life.  As a result, she never told him he faced an automatic life sentence by pleading guilty.[18]  Williams testified that he did not recall whether he advised petitioner that he faced an automatic life sentence.[19]

Faced with the foregoing facts, the state court elected to forego a discussion as to whether counsel performed deficiently in this regard.  That is hardly surprising.  If counsel fails to determine a client's true sentencing exposure or fails to advise him that he faces an automatic life sentence by pleading guilty, there can be little doubt that counsel has performed deficiently.

However, deficient performance alone does not entitle petitioner to relief – he must *also* show resulting prejudice.  The state court concluded that he had not made that showing, and, for the following reasons, that conclusion was not unreasonable.

As already noted, in order to show establish prejudice, petitioner "must show that there is a *reasonable probability* that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 474 U.S. 52, 59 (1985) (emphasis added).  Although petitioner testified at the evidentiary hearing that he would not have pleaded guilty had he known he faced an automatic life sentence,[20] it is clear that a petitioner's "bald assertions that he would have insisted on going to trial are insufficient."  United States v. Hebert, Crim. Action No.

---

[18] State Rec., Vol. III of VI, transcript of August 13, 2014, p. 7.

[19] Id. at p. 24.

[20] Id. at 38.

09-154, 2014 WL 5810519, at *7 (E.D. La. Nov. 6, 2014). That is because the test at issue is not *subjective*; rather it "is *objective*; it turns on what a *reasonable person* in the defendant's shoes would do." <u>United States v. Smith</u>, 844 F.2d 203, 209 (5th Cir. 1988) (emphasis added). <u>See also</u> <u>Padilla v. Kentucky</u>, 559 U.S. 356, 372 (2010) ("[A] petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

       Here, petitioner's protestations that he would have insisted on going to trial are unconvincing, because he had little or nothing to gain by that choice. As Williams explained at the evidentiary hearing, petitioner would almost certainly have been convicted at trial. Indeed, the evidence against him was overwhelming. As the Louisiana First Circuit Court of Appeal noted on direct appeal:

> According to the St. Tammany Parish Sheriffs Department Case Report, which is included in the record, the defendant was arrested after the St. Tammany Parish Narcotics Task Force conducted an undercover investigation into illegal drug activity at the defendant's residence. On November 5, 2003 the defendant sold twelve MDMA tablets to an undercover officer for $240. On November 12, 2003 the defendant sold ten MDMA tablets to the undercover officer for $200. Again, on January 2, 2004, the defendant sold fifteen MDMA tablets to the undercover officer for $260. Surveillance of the defendant's residence during this time period revealed frequent traffic to and from the house. The defendant was arrested and charged with one count of possession with intent to distribute MDMA on January 2, 2004, and at that time had $3,878 in cash in his pants pocket, including the bills received from the sales to the undercover officer. Around the same time as the defendant's arrest, narcotics officers conducted a search of his residence and found items with drug residue, numerous items of drug paraphernalia, a gun, and ammunition. Officers arrested several people who were at or came to the residence at the

time of the search, some of whom stated that they had come to the residence to purchase MDMA, marijuana or cocaine.[21]

At the evidentiary hearing, Williams testified: "Given the circumstances of this case and the nature of the juries here in St. Tammany, the evidence against [petitioner] and his record, there is no way I could put him on the witness stand."[22] Faced with those realities, Williams testified that he did not think that "we had any chance of a not guilty at trial."[23]

On the other hand, both Yazbeck and Williams testified that petitioner had a chance of obtaining one possible benefit by pleading guilty: a downward departure under State v. Dorthey, 623 So.2d 1276 (La. 1993).[24] In Dorthey, the Louisiana Supreme Court held that, if the trial judge finds "that the punishment mandated by R.S. 15:529.1 makes no measurable contribution to acceptable goals of punishment or that the sentence amounted to nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime, he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive." Id. at 1280-81 (internal quotation marks omitted).

At the evidentiary hearing, Williams explained:

I know the Court was aware before I – I'm virtually sure that the Court was aware of the quad bill and that I was moving for a Dorthey

---

[21] State v. Tisdale, No. 2011 KA 2159, 2012 WL 2061540, at *1 (La. App. 1st Cir. June 8, 2012); State Rec., Vol. V of VI.

[22] State Rec., Vol. III of VI, transcript of August 13, 2014, p. 33.

[23] Id. at p. 28.

[24] Id. at pp. 12 and 28.

> downward departure.  And the Court, as I recall, said that she would
> not make a decision before the actual hearing or before the plea.
>           But I felt that not thinking we had any chance of a not guilty
> at trial, I felt that if we went to trial, he would get life in prison, that
> this was his only chance.[25]

In light of the foregoing, it was reasonable for the state court to hold that petitioner had not established the prejudice necessary to support his claim and to therefore deny his claim on that basis.  Again, although petitioner states that he would have insisted on going to trial, the issue is what a *reasonable person* in his shoes would have done.  The state court obviously concluded, and this Court agrees, that a reasonable person would have pleaded guilty.  For the reasons noted by Williams, petitioner had no viable defense and he would almost certainly have been found guilty at trial – therefore, he lost little or nothing by entering his plea.  On the other hand, by accepting responsibility and pleading guilty, he at least had the possibility of garnering the trial judge's good will and making her more amenable to a downward departure under <u>Dorthey</u>.  Although the judge ultimately declined to grant a departure under <u>Dorthey</u>, that does not change the fact that a reasonable person would choose that option – especially when that was realistically his *only* chance to possibly avoid a life sentence.  Accordingly, under doubly deferential standards of review which must be applied in this federal proceeding, this Court should likewise deny relief.

Lastly, as noted, the trial court also found that petitioner's counsel was not ineffective for failing to file a motion for reconsideration of sentence pursuant to La. Code Crim. Proc. art. 881.1.  Petitioner does not appear to be asserting that claim in his federal application.  Nevertheless,

---

[25] <u>Id</u>. at p. 28.

out of an abundance of caution, the Court notes that the claim likewise has no merit for the following reasons even if petitioner intended to assert it.

Once again, petitioner cannot establish that he was prejudiced by counsel's failure. Even if a motion for reconsideration had been filed, there is no reasonable probability that the trial judge would have granted such a motion. On the contrary, she had carefully considered petitioner's sentence and even issued written reasons for her sentencing judgment, explaining:

> The Court, in imposing the herein sentences, considered both aggravating and mitigating circumstances under the provisions of the Louisiana Code of Criminal Procedure article 894.1. The Court finds the following aggravating circumstances:
>
> (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime; and
> (2) A lesser sentence will deprecate the seriousness of the defendant's crime.
>
> Defendant argued as to the excessiveness of a life sentence in this case, relying on State v. Dorthey, 623 So.2d 1276 (La. 9/10/93). Upon review of the entire record, including the May 5, 2009 presentence investigation, and the defendant's criminal history which showed a pattern of law violations stemming from 1991 involving jail and probationary periods, the Court finds that a life sentence is not grossly out of proportion to the seriousness of the offense, and therefore does not find a life sentence constitutionally excessive as applied to this particular defendant.[26]

There is likewise no reasonable probability that petitioner would have been afforded relief on direct appeal. The sentences imposed by the trial court were mandatory under state law.

---

[26] State Rec., Vol. II of VI, Reasons for Judgment dated November 17, 2009.

- 15 -

Although Louisiana state courts can depart from a mandatory sentence based on a finding that it is excessive under the circumstances of a particular case, the Louisiana Supreme Court has explained:

> In determining whether a punishment is grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering, State v. Bonanno, 384 So.2d 355, 357 (La. 1980), this Court has repeatedly emphasized that sentence review under the Louisiana constitution does not provide an appellate court with a vehicle for substituting its judgment for that of a trial judge as to what punishment is more appropriate in a given case. State v. Walker, 00-3200, p. 2 (La. 10/12/01), 799 So.2d 461, 462; State v. Cook, 95-2784, p. 3 (La. 5/31/96), 674 So.2d 957, 959; State v. Humphrey, 445 So.2d 1155, 1165 (La. 1984).

State v. Savoy, 93 So.3d 1279, 1282-83 (La. 2012).

Here, although petitioner was sentenced as a fourth offender, he in fact had at least *eight* prior felony convictions.  Moreover, his instant offenses were particularly serious ones involving the distribution of drugs.  Louisiana courts have long considered such offenses grave crimes warranting severe penalties.  See, e.g., State v. Terrebonne, 364 So.2d 1290, 1292 (La. 1978) ("Social harm in drug distribution is great indeed. The drug seller, at every level of distribution, is at the root of the pervasive cycle of destructive drug abuse. ...  Drug addiction degrades and impoverishes those whom it enslaves.  This debilitation of men, as well as the disruption of their families, the Legislature could also lay at the door of the drug traffickers.  Measured thus by the harm it inflicts upon the addict, and, through him, upon society as a whole, drug dealing in its present epidemic proportions is a grave offense of high rank." (quoting Carmona v. Ward, 576 F.2d 405, 411 (2nd Cir. 1978)).[27]  Given the gravity of petitioner's crimes and his extensive criminal

---

[27] This Court notes that, in his concurring opinion in Harmelin v. Michigan, 501 U.S. 957 (1991), Justice Kennedy similarly noted the gravity of drug offenses and the harm they cause to society as

record, there is no reason to believe that either the Louisiana First Circuit Court of Appeal or the Louisiana Supreme Court would have taken the extraordinary step of substituting its judgment for that of the trial judge in this case and granted any challenge to the sentences on direct appeal, even if the right to assert such a challenge had been properly preserved.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition of **Ricky Tisdale** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

a whole:

> Possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare of our population. Petitioner's suggestion that his crime was nonviolent and victimless, echoed by the dissent, is false to the point of absurdity.  To the contrary, petitioner's crime threatened to cause grave harm to society.
> Quite apart from the pernicious effects on the individual who consumes illegal drugs, such drugs relate to crime in at least three ways:  (1) A drug user may commit crime because of drug-induced changes in physiological functions, cognitive ability, and mood; (2) A drug user may commit crime in order to obtain money to buy drugs; and (3) A violent crime may occur as part of the drug business or culture.

Id. at 1002 (citations and quotation marks omitted).

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[28]

New Orleans, Louisiana, this twenty-seventh day of July, 2015.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[28] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.